**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2232-24

HARVEST RESTAURANT
GROUP,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

INDEMNITY INSURANCE
COMPANY OF NORTH
AMERICA, and NOVA
CASUALTY COMPANY,

    Defendants-Respondents/
    Cross-Appellants.

_____

        Argued June 4, 2026 – Decided July 1, 2026

        Before Judges Mawla, Marczyk and Bishop-Thompson.

        On appeal from the Superior Court of New Jersey, Law
        Division, Morris County, Docket No. L-1742-20.

        Carl A. Salisbury argued the cause for appellant/cross-
        respondent (Bramnick Grabas Arnold & Mangan LLC,
        attorneys; Carl A. Salisbury, on the briefs).

Jonathan P. McHenry argued the cause for respondent/cross-appellant Indemnity Insurance Company of North America (Connell Foley LLP, attorneys; Jonathan P. McHenry and Alyse Berger Heilpern, of counsel and on the briefs).

Christopher Cerullo argued the cause for respondent/cross-appellant Nova Casualty Company (Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP, attorneys; Douglas V. Sanchez, of counsel; Christopher Cerullo, on the briefs).

PER CURIAM

Plaintiff Harvest Restaurant Group appeals from February 11, 2025 orders granting defendants Indemnity Insurance Company of North America (IINA) and Nova Casualty Company (Nova) summary judgment and denying coverage for property damage to premises leased by plaintiff. Defendants cross-appeal from portions of the orders denying summary judgment based upon other provisions in their respective insurance policies. We discuss the respective policy provisions first, then delve into the facts and motion judge's decision.

IINA's policy stated it will pay for legally obligated damages resulting from "property damage" and defend any "suit" where coverage applies. The property damage must also have taken place during the policy period. Property damage is deemed to have been known when a report is made to IINA; plaintiff received a written or verbal demand or claim; or plaintiff otherwise became

aware of a demand or claim, whichever came first.  Exclusion (j) of the policy

barred coverage for property damage for:

> (1) Property you . . . rent[] or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration[,] or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;
>
> . . . .
>
> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> . . . .
>
> Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard[."]

Exclusion (m) of the policy barred coverage for impaired property damage,

which resulted from "[a] defect, deficiency, inadequacy or dangerous condition

in . . . 'your work.'"

3

An "occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" meant:

> a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Nova's policy covered "sums . . . [plaintiff] becomes legally obligated to pay as damages because of . . . 'property damage.'"  Like IINA, Nova agreed to defend plaintiff and cover claims arising during the policy period.  Property damage was also deemed to have been known when notice was received, which included "a written or verbal demand" for damage.

Like IINA, the Nova policy's exclusions included (j)(5) and (6).  It also included a property damages exclusion, which read as follows:

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in . . . "your work"; or
>
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

4

It further stated:

> "Impaired property" means tangible property, other than . . . "your work[,"] that cannot be used or is less useful because:
>
>> a. It incorporates . . . "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>>
>> b. You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by the repair, replacement, adjustment or removal of . . . "your work" or your fulfilling the terms of the contract or agreement.

The policy also included the following notice requirements:

> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. . . .
>
> . . . .
>
> b. If a claim is made or "suit" is brought against any insured, you must:
>
>> (1) Immediately record the specifics of the claim or "suit" and the date received; and
>>
>> (2) Notify us as soon as practicable.
>>
>> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

A-2232-24

"Suit" is defined as "a civil proceeding in which damages because of . . . 'property damage' . . . to which th[e] insurance applies are alleged."

In 2013, plaintiff entered a lease with Tarta Luna, LLC to rent 115 Elm Street in Westfield. Plaintiff intended to operate a restaurant on the site. The lease involved extensive repairs, rebuilding, and constructing an addition to the building on the premises. Plaintiff's lease required it to maintain a builder's risk casualty insurance policy.

In June 2014, plaintiff hired an architect for the project. In September 2014, it contracted with an engineering firm. Plaintiff also hired a construction firm. Chester Grabowski acted as plaintiff's representative in signing the contracts. The local planning board granted plaintiff preliminary and final site plan approval in October 2014. Construction took place during 2015, and the restaurant opened in November 2016, after receiving a certificate of occupancy.

Plaintiff obtained two occurrence-based commercial general liability (CGL) insurance policies from Nova, effective from June 15, 2014 to June 15, 2015, and June 15, 2015 to June 15, 2016. IINA also issued two occurrence-based CGL policies, effective June 15, 2016 to June 15, 2017, and June 15, 2017 to June 15, 2018.

Around September 2015, Tarta Luna's owner and the owner of 125 Elm Street (the Tarta Luna plaintiffs) complained to plaintiff about the effect the construction was having on a wall shared by both buildings. The Tarta Luna plaintiffs also complained to the planning officials, who issued a stop-work order. In response, plaintiff's engineer inspected the wall and found no damage. Plaintiff removed ledger boards and bolts connected to the common wall, believing this would resolve the dispute, and construction continued.

A subsequent stop-work order was issued in May 2016. In August 2016, the Tarta Luna plaintiffs sued plaintiff, alleging construction and design issues made the building unsafe. Plaintiff's engineer certified the construction was up to code. The project's architect and a municipal construction code official also confirmed the work was up to code.

In December 2017, the Tarta Luna trial court found plaintiff's architect and engineer applied the wrong building code, creating a public safety risk. The court enjoined plaintiff from opening the restaurant because the common wall between the properties could not handle the intended seismic load due to plaintiff's renovations. It also granted the Tarta Luna plaintiffs injunctive relief because monetary damages would not remedy the harm they suffered. Plaintiff completed the remedial work and the restaurant reopened in December 2018.

A-2232-24

Nova's third-party claims administrator acknowledged receipt of the notice of the Tarta Luna lawsuit in March 2018. Plaintiff did not notify either carrier earlier because there was no damage to the property.

In April 2018, Nova denied coverage and notified plaintiff it would not defend or indemnify it in the Tarta Luna lawsuit because none of the insuring agreements were triggered and there was late notice of the claim. IINA also denied coverage in a letter dated April 2018. In November 2018, citing its April 2018 letter, IINA denied coverage because it found there was no occurrence constituting property damage. It noted plaintiff was aware of the alleged damage prior to the inception of its policy.

Plaintiff sued defendants. Its complaint sought a declaratory judgment against defendants requiring them to defend and indemnify plaintiff against Tarta Luna's claims. Plaintiff also alleged a breach of contract.

Grabowski was deposed and explained he oversaw plaintiff's insurance programs. He testified he did not inform defendants about the Tarta Luna litigation until after a decision was rendered. Grabowski conceded the common wall was a part of the property plaintiff leased from Tarta Luna. He agreed he was notified about the stop-work order in September 2015. Grabowski testified

A-2232-24

plaintiff did not obtain a builder's risk policy because he believed its CGL policy would provide coverage. He confirmed IINA received notice in March 2018.

A Nova claims adjuster was deposed and explained coverage was only available if there was property damage. Nova's policy did not cover injunctive relief claims.

Defendants moved for summary judgment after the close of discovery. On February 11, 2025, the motion judge issued a detailed written opinion adjudicating the motions.

Initially, the judge observed both IINA and Nova's policies required: "(1) property damage; (2) caused by an accident; (3) during the policy period; and (4) no knowledge of the alleged 'accident' prior to the policy period." Both policies were occurrence-based, which he found "encompasses an 'accident.'"

The judge concluded the wall damage was the result of defective work because the Tarta Luna court had found plaintiff and its subcontractors did not complete the construction in a workman-like manner in compliance with the law and building codes. Thus, each defendants' policy provided coverage.

The judge next addressed the timing of notice issue. He found the accident resulted in a stop-work order on May 13, 2016, and the Tarta Luna court's issuance of an injunction on December 12, 2017. "Therefore, as a result of the

9

accident, [p]laintiff suffered damages in the form of loss of use of the property for multiple years, including at times when both the Nova and . . . IINA policies were active."

The judge found "[b]ecause property damage is defined as including 'loss of use of the property,' . . . [p]laintiff knew of the property damage prior to . . . June 15, 2016." Indeed, "[t]he stop[-]work order was issued on May 13, 2016. Plaintiff knew, in part, that because of the 'accident' and the complaints filed in 2015 and early 2016, there was property damage in the form of 'loss of use.'" He observed, "[t]his continued through the IINA policy period when ultimately on December 3, 2018, [plaintiff] was permitted to reopen the premises . . . for business," having made the repairs and obtained a certificate of occupancy.

Therefore, even though "there was property damage caused by an accident during the policy periods of both IINA and Nova[,] . . . [p]laintiff knew of the property damage . . . prior to IINA's policy period[,] . . . [and] IINA's insuring agreement [wa]s not implicated." The judge granted IINA summary judgment based on its known injury or damage provision and denied Nova's motion for summary judgment because its policy had started earlier.

The judge then turned to defendants' arguments related to specific exclusion provisions. He found IINA's (j)(1) exclusion did not apply because

plaintiff's property damage was for the loss of use of the leased building, not the costs or expenses of repairing or rebuilding the property.

The motion judge found IINA and Nova's (j)(5) exclusions barred coverage because the claim against plaintiff "is certainly for damage to real property caused by either [p]laintiff or the subcontractors performing operations on behalf of [p]laintiff. The subcontractors were working on the [common] wall and their activities performed were what damaged the property." Therefore, the judge granted IINA and Nova summary judgment. The judge also granted IINA and Nova summary judgment based on the (j)(6) exclusion because plaintiff's contractors caused the damage as evidenced by the fact plaintiff had separately sued its architect and engineer for malpractice.

Addressing IINA's impaired property policy provision, the judge found "the property damage, in particular the loss of use of the property, arose out of the defective work by [p]laintiff's subcontractors." The Tarta Luna court "deemed the property, including the common wall, to be defectively and inadequately constructed," which "rendered the property dangerous and unusable." The judge concluded the impaired property exclusion applied and therefore granted IINA's motion.

Nova argued coverage was barred because plaintiff did not provide it with timely notice of the claim. This prevented Nova from intervening in the Tarta Luna litigation and mounting a defense. The judge granted Nova summary judgment for these reasons. He explained, Nova "met its burden of showing . . . it could not employ its normal [claims] procedures" to meaningfully defend itself in the Tarta Luna litigation and had "a high likelihood of success . . . in defending against [p]laintiff's claim."

I.

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving

12

party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540).

"Summary judgment should be granted, . . . 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman, 242 N.J. at 472 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). However, summary judgment is not meant to "shut a deserving litigant from [their] trial." Brill, 142 N.J. at 540 (quoting Judson v. Peoples Bank & Tr. Co. of Westfield, 17 N.J. 67, 77 (1954)). Nor is it appropriate when discovery is incomplete and the moving party has knowledge of critical facts. Friedman, 242 N.J. at 472.

We review the trial court's grant or denial "of a motion for summary judgment de novo, applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022). "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'"

13

DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).  On de novo review, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The enforceability of contract provisions, like an insurance policy, is a question of law also subject to de novo review.  Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019).  No deference is owed to a trial court's contractual interpretation.  Ibid.

## II.

## A.

Plaintiff contends the motion judge's finding an insured must have no knowledge of the alleged accident prior to the policy period was erroneous because neither IINA nor Nova's policies contained such language.  Rather, the policies state they will pay all sums the insured becomes legally obliged to pay as damages because of property damage caused by an occurrence, so long as the damage occurred during the policy period and the insured had no knowledge the

14

property damage had occurred, in whole or in part, prior to the policy period. The policies do not refer to prior knowledge of an "accident," but rather prior knowledge of "property damage." These are two different things.

Indeed, the policies define an "occurrence," as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." An occurrence can happen months, or even years, prior to the policy period, and there will be coverage so long as the occurrence causes property damage during the policy period. Plaintiff argues an insured may know an accident occurred before the policy period but not know it caused third-party property damage. Knowledge of an accident does not justify the denial of coverage under either policy.

Plaintiff contends the judge did not understand the CGL policy covers an insured's accidental damage to third-party properties and does not cover sums incurred for damage to property occupied by the insured. While 115 Elm Street would not qualify as third-party property because plaintiff occupied it, 125 Elm Street would. The judge erroneously found the relevant property damage was Tarta Luna's loss of use of 115 Elm Street, despite the fact plaintiff only sought coverage for damage to the common wall of 125 Elm Street.

15

Plaintiff argues the judge's characterization of the property damage as a loss of use of 115 Elm Street and his conclusion the loss of use continued through the IINA policy period erroneously equated the construction activities and the brief stop-work order with a loss of use of the property. There was no evidence Tarta Luna suffered a loss of use of 115 Elm Street. 115 Elm Street was a rental property, and plaintiff never missed a rent payment, including during construction. Plaintiff's renovations improved the building.

Plaintiff asserts the sole notice-related provision in IINA's policy states IINA will pay for property damage if, before the policy period, neither an insured nor authorized employee of the insured knew or became aware property damage had occurred. The provision also states, "any continuation, change or resumption of such . . . 'property damage' during or after the policy period will be deemed to have been known prior to the policy period." An endorsement to the policy narrows the limits in coverage set forth in these notice requirements. Plaintiff argues the notice provisions in the endorsement create fact issues, which render the policy provisions so inconsistent they become ambiguous.

Plaintiff maintains the trial judge also ignored the prefatory language to the endorsement, which clearly states the endorsement changes the policy and

16

modifies "Condition 6. Representations," of Section IV of the CGL Conditions by adding the following paragraph:

> UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS OR PRIOR OCCURRENCES
>
> . . . .
>
> Failure to disclose all hazards or prior "occurrences" or offenses existing as of the inception date of this Coverage Part shall not prejudice the coverage afforded under this Coverage Part, provided such failure to disclose all hazards or prior "occurrences" or offenses is unintentional.

Plaintiff contends another endorsement provision narrows the known property damage limitations and modifies paragraph two of the General Liability Conditions pertaining to the insured's "Duties in the Event of Occurrence, Offense, Claim[,] or Suit." It states:

> g. If a claim or loss does not reasonably appear to involve this insurance, but it later develops into a claim or loss to which this insurance applies, the failure to report it to us will not violate this condition, provided the insured gives us notice as soon as practicable of becoming aware that this insurance may apply to such loss or claim.

Plaintiff argues these provisions require an inquiry into plaintiff's understanding, whether it believed prior to the IINA policy period a loss had occurred, if that loss reasonably appeared to involve policy coverage, and

17

whether a failure to give earlier notice to IINA was unintentional. It contends these questions cannot be resolved by summary judgment.

Plaintiff asserts the Tarta Luna court found Grabowski reasonably believed plaintiff's professionals were performing the renovations in a satisfactory manner. Even after the Tarta Luna plaintiffs sued, plaintiff had no reason to believe a property damage or loss claim would implicate IINA's policy. This is because, on November 11, 2016, less than ninety days after the Tarta Luna litigation began, plaintiff was granted permission to open the restaurant and obtained a certificate of occupancy. A jury could conclude Grabowski reasonably believed there was no insurance claim when the Tarta Luna owners complained about the construction. Therefore, Grabowski did not intentionally fail to disclose an occurrence before IINA's coverage began.

Plaintiff asserts the notice provision relied upon by the motion judge, which precluded coverage upon a showing the insured knew of property damage before the policy period, cannot be reconciled with the other notice provisions; specifically, the provision allowing coverage if the failure to give notice was unintentional and the provision preserving coverage if the claim or loss did not reasonably appear covered to the insured. Since the notice provisions are conflicting, the policy must be read to provide coverage.

IINA's cross-appeal contends the motion judge misconceived plaintiff's property damage to be a loss of use. The judge also erred in relying on the damages alleged in the Tarta Luna case because that litigation concerned claims of breach of contract, building code violations, and public safety concerns. These claims are different from the IINA policy's definitions of property damage, which contemplate physical injury to tangible property or loss of use of tangible property. The Tarta Luna court did not find the plaintiffs there had suffered property damage and instead, enjoined the restaurant from operating.

IINA points out its policy does not afford coverage for economic losses and our courts have routinely found CGL policies do not cover contractual liability losses. Coverage for construction defects depends on whether the damage was caused by faulty workmanship or remediation of the faulty workmanship. Insureds bear the cost of remedial work, not insurers.

Nova's cross-appeal claims the motion judge erred in concluding property damage resulted from an occurrence despite the exclusions. It raises similar arguments to IINA that a CGL policy does not cover economic loss or faulty workmanship without a resultant accident. Nova also contends the judge improperly relied on the damages alleged in the Tarta Luna litigation. It urges us to reverse the finding faulty workmanship constituted an occurrence.

19

B.

Insurance policies are enforced as written when they are clear and unambiguous. Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010). When the terms of a policy are not clear, they are construed against the insurer. Ibid. CGL policies "[o]rdinarily . . . cover[] . . . liability for physical damage to others and not . . . contractual liability of [an] insured for economic loss because the . . . completed work is not that for which the damaged person bargained." Newark Ins. Co. v. Acupac Packaging, Inc., 328 N.J. Super. 385, 391 (App. Div. 2000) (citing Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 240-41 (1979)); Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C., 226 N.J. 403, 416 (2016).

Here, both policies defined property damage as either "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." "Physical harm" is defined as "[a]ny physical injury or impairment of land, chattels, or the human body." Black's Law Dictionary 784 (9th ed. 2009).

An occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." While the policies do not define an accident, our Supreme Court has stated it means,

20

"unintended and unexpected harm caused by negligent conduct." Cypress Point, 226 N.J. at 427.

Insurance policies are examined first for coverage under their insuring agreements. Id. at 424. If coverage is found, then a court considers whether any exclusions apply. Id. at 424-25, 429. Exclusions are read with the insuring agreements, but independently of other exclusions. Weedo, 81 N.J. at 248.

Weedo involved whether an insurance company was required to defend claims brought against its insured based on construction defects. Id. at 235. The Court stated insurance liability "is predicated upon . . . injury to persons and damage to other property[, which] constitute[s] the risks intended to be covered under [a] CGL" policy. Id. at 240-41. Business risks are "the replacement or repair of faulty goods and works" and are a "part of every business venture." Id. at 239. Such risks are not covered by CGL policies but rather "borne by the insured-contractor in order to satisfy customers." Ibid. The Court concluded there was no coverage since the policy excluded "coverage for repair and replacement of its own faulty workmanship." Id. at 247.

In Cypress Point, the Court addressed "whether rain water damage caused by a subcontractor's faulty workmanship constitute[d] 'property damage' and an 'occurrence' under a" CGL policy. 226 N.J. at 407-08. The insurer argued

21

coverage was excluded under a "your work" exclusion,[1] which had been revised by the insurance industry since <u>Weedo</u>. <u>Id.</u> at 417-19. The Court held the "your work" exclusion did not apply because it included a "subcontractor exception" for work performed on the insured's behalf. <u>Id.</u> at 430. It also distinguished but did not overrule <u>Weedo</u>, because <u>Weedo</u> dealt with different exclusions under a 1973 standard insurance form, which no longer applied. <u>Id.</u> at 430-31. Therefore, the consequential water damage to the property was covered, even if the business risks of the contractors' work were not. <u>Id.</u> at 430.

Here, construing the policies in plaintiff's favor, we conclude the insuring agreements were triggered. Property damage occurred to the wall because plaintiff could not use its leased space for a period because of improperly attached ledger boards and bolts. The motion judge correctly found there was an occurrence because plaintiff's engineer applied the wrong building code, creating a public danger, which resulted in unintended and unexpected harm.

---

[1] Like the <u>Weedo</u> policy, IINA and Nova's policies include the same exclusion, namely, exclusion (*l*). However, it is inapplicable in this matter because neither insurer sought to bar coverage under this exclusion.

III.

A.

Plaintiff argues the (j)(5) exclusion did not apply because exclusionary clauses are strictly construed against insurers and are only enforceable if clearly applicable. Insurers bear the burden of establishing exclusion applicability. On a temporal basis, the exclusion applies to property damage occurring while a contractor's work is ongoing. It does not preclude coverage for hidden damage persisting after the contractor's work is finished. The purpose of the products-completed operations hazard (PCOH) provision is to cover ongoing damage.

Plaintiff asserts the motion judge improperly found the (j)(5) exclusion barred recovery for damage from the expansion anchors installed before May 2016 until their removal after the restaurant closed on December 15, 2017. He also construed the exclusion broadly to include property damage which was not a part of plaintiff's subcontractors' work when he found their work was connected to a common wall. This is because 115 and 125 Elm Street were separate properties, and the subcontractors only worked on a particular part of 115 Elm Street.

23

B.

"Exclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" Flomerfelt, 202 N.J. at 441 (quoting Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997)). Courts do "not search for ambiguities [in exclusions] where there are none." Villa v. Short, 195 N.J. 15, 26 (2008).

"In general, insurance policy exclusions must be narrowly construed[ and] the burden is on the insurer to bring the case within the exclusion." Princeton Ins., 151 N.J. at 95. If an exclusion requires a causal link, then "courts must consider its nature and extent because evaluating that link will determine the meaning and application of the exclusion." Flomerfelt, 202 N.J. at 442-43. If there is no causal link requirement, the plain language will be applied as written. Id. at 443.

We have previously examined an identical exclusion for a damage-to-property clause, and held it applicable when three questions are affirmatively answered: "(1) Is the claim for damage to 'real property'? (2) Was the insured, or someone working on behalf of the insured, performing operations on 'that particular part' of the property that was damaged; and (3) Did the damage occur while the operations were being performed?" Ohio Cas. Ins. Co. v. Island Pool

& Spa, Inc., 418 N.J. Super. 162, 176 (App. Div. 2011) (quoting Jeffrey E. Thomas, New Appleman on Insurance Law, Library Edition § 18.03[10][h] (2010)).

IINA and Nova's (j)(5) exclusions mirror the one in Ohio Casualty. Id. at 165-66. The exclusion clearly does not cover damage resulting from an insured or their contractor's work on a property.

The motion judge did not err when he found the work was being performed on plaintiff's property because Grabowski conceded as much by acknowledging the wall was part of plaintiff's leased premises. Plaintiff's contractors were "performing operations," and the alleged damage occurred while they were working on the wall. We also reject plaintiff's contention the damage was hidden and ongoing even after the work was completed because plaintiff was alerted to the problem by the stop-work orders and the Tarta Luna plaintiffs' complaints in 2015 and 2016. For these reasons, even though the insuring agreement was triggered, the (j)(5) exclusion applied and barred coverage.

IV.

A.

Plaintiff contends the (j)(6) exclusion in both policies was unenforceable because it was complex and difficult to understand. The exclusion requires an

insured to cross-reference other parts of the policy and contains definitions within definitions.

"Property damage" means "[p]hysical injury to tangible property, including all resulting loss of use of that property."  The phrase, "your work" means:  "(1) [w]ork or operations performed by you or on your behalf; and (2) [m]aterials, parts[,] or equipment furnished in connection with such work or operations."  "Your work" includes:  "(1) [w]arranties or representations made at any time with respect to the fitness, quality, durability, performance[,] or use of 'your work'; and (2) [t]he providing of or failure to provide warnings or instructions."

The final definition in the exclusion is in the exception for the PCOH endorsement, which the policy form and the endorsement to the policy define differently.  The original language of the policy was modified by the PCOH endorsement.  The endorsement form[2] to the policy reads:  "THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.  PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED."  The definition in the endorsement states:

---

[2]  Nova's policy does not contain this endorsement.

A-2232-24

Paragraph a. of the definition of "Products[-]completed operations hazard" in the DEFINITIONS Section is replaced by the following:

"Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

As such, the original definition at paragraph a. and its subparts are entirely replaced by this definition.

Plaintiff argues the new definition eliminates "your work" from the scope of the coverage provision and makes it apply only to "your products." This is important because the definition of "your products" expressly excludes real property. Consequently, (j)(6) does not preclude damage to real property. Also, since the PCOH endorsement applies to products other than real property, the scope of the "your work" exclusion also does not apply to real property damage. Plaintiff asserts that because the work of subcontractors is what typically results in real property damage, removing real property from the exclusion clarifies that damage from faulty subcontractor work will not be excluded from coverage by either (j)(6) or the "your work" exclusion in the IINA policy.

Plaintiff claims any doubt about the scope of the (j)(6) exclusion should be resolved in its favor. This is because, since the revision of the CGL policy

27

in 1986, policyholders have had the reasonable expectation such policies would cover third-party property damage arising from a subcontractor's faulty workmanship. An insured's reasonable expectations of coverage must prevail over contrary policy language. If IINA intended to make a major change to CGL coverage by removing protection against faulty subcontractor workmanship, it had to do so clearly and with approval from the Department of Banking and Insurance.

B.

Both IINA and Nova's (j)(6) exclusion barred plaintiff's claim because, as the Tarta Luna court held, the harm was the building code violation, not physical damage. Therefore, the damage was based on plaintiff's "incorrectly performed" work. The exclusion plainly bars coverage for work to restore, repair, or replace any damage.

Plaintiff's argument regarding the PCOH endorsement is equally unpersuasive. The (j)(6) exclusion does not apply to PCOHs. Under Nova's policy, the exception only applied to property damage occurring away from premises plaintiff leased, which did not apply here. And the PCOH endorsement in IINA's policy only covered products, not walls, as is the case here. We discern no error in the motion judge's finding the (j)(6) exclusion applied.

28

V.

A.

Plaintiff contends the "impaired property," or (m), exclusion does not cover property damage because it applies to tangible property other than "your product" or "your work."  Since the definition excludes an insured's own products or work, "impaired property" can only be property belonging to a third party, namely, 125 Elm Street.  The policies also define "impaired property" as property "that cannot be used or is less useful" due to a subcontractors' faulty workmanship.  Plaintiff asserts the only parties harmed by plaintiff's work were Tarta Luna and 125 Elm Street, but the harm did not make either property unusable or less useful, and the (m) exclusion should not have applied.

B.

We have held the (m) "exclusion only applies regarding claims for damage to the insured's own work arising out of [their] faulty workmanship, and does not exclude damage to other property not manufactured or provided by the insured, yet caused by the insured's poor performance."  Newark Ins. Co., 328 N.J. Super. at 398-99.  The Tarta Luna plaintiffs never complained of damage to their property.  Instead, they claimed the work done by plaintiff's contractors did not comply with the building code, thereby creating a dangerous condition.

29                                                            A-2232-24

Therefore, there was no third-party damage or grounds to deny the applicability of the exclusion as in either <u>Newark Insurance</u>, which involved a claim of leaking pacquettes that adhered to a third party's magazines, <u>id.</u> at 400-01, or <u>Phibro Animal Health Corp. v. National Union Fire Insurance Co. of Pittsburgh</u>, which concerned an additive for chicken feed that stunted the chickens' growth, 446 N.J. Super. 419, 445-46 (App. Div. 2016).  As such, the dangerous condition of the building fell squarely within the (m) exclusion.

## VI.

### A.

Plaintiff challenges the motion judge's finding there was no coverage based upon Nova's late receipt of plaintiff's claim.  It notes all cases involve some delay depriving the carrier of its ability to defend.  However, the defense is owed to the insured rather than the insurer's ability to defend against an insured's claim for coverage as the motion judge found.

### B.

Our law requires "a showing of prejudice before a contract of insurance may be avoided."  <u>Pfizer, Inc. v. Emps. Ins. of Wausau</u>, 154 N.J. 187, 206 (1998).  "[I]t would be unfair for an insured to lose insurance coverage where there is no likelihood the insurer was prejudiced by the policy breach."

KnightBrook Ins. Co. v. Tandazo-Calopina, 472 N.J. Super. 158, 168 (App. Div. 2022) (discussing Cooper v. Gov't Emps. Ins. Co., 51 N.J. 86, 94 (1968)). For this reason, an insurer "may not forfeit the bargained-for protection unless there [is] both a breach of the notice provision and a likelihood of appreciable prejudice." Ibid. (quoting Cooper, 51 N.J. at 94). The insurer has the burden of showing appreciable prejudice. Ibid.

Nova's policy required plaintiff to notify Nova "as soon as practicable" of an "occurrence" or if a "suit" was brought against it. Plaintiff gave notice on March 26, 2018, three months after the Tarta Luna court rendered its December 12, 2017 decision, and over a year and a half after Tarta Luna filed its August 17, 2016 complaint. Plaintiff, therefore, did not provide Nova with notice as soon as practicable.

The next question is whether Nova suffered "appreciable prejudice" due to plaintiff's breach of the insurance policy. There are two variables for courts to consider when determining whether an insurer suffered "appreciable prejudice." Hager v. Gonsalves, 398 N.J. Super. 529, 536 (App. Div. 2008). The first is "'whether substantial rights have been irretrievably lost' as a result of the insured's breach, and second, 'the likelihood of success of the insurer in defending against the [underlying plaintiff]'s claim' had there been no breach."

31

Ibid. (quoting Sagendorf v. Selective Ins. Co. of Am., 293 N.J. Super. 81, 93 (App. Div. 1996)). Under the first variable, an insurer "must establish more than the mere fact that it cannot employ its normal procedures in investigating and evaluating the claim." Sagendorf, 293 N.J. Super. at 93 (quoting Morales v. Nat'l Grange Mut. Ins. Co., 176 N.J. Super. 347, 355 (Law Div. 1980)).

An insurer's satisfaction of either variable is "sufficient to establish appreciable prejudice to disclaim any obligation to provide coverage to an insured." KnightBrook Ins., 472 N.J. Super. at 169. The "first variable applies to an irretrievable loss of substantial rights related to coverage determinations by an insurer" because "[t]o conclude otherwise would render the second variable . . . redundant." Ibid. (emphasis added). The two variables are meant to address "different aspects of appreciable prejudice." Ibid.

The motion judge misapplied the second variable by considering whether Nova would have likely succeeded in defending against plaintiff's claim for coverage, rather than defending against the Tarta Luna plaintiffs' claim. In regard to the first variable, although Nova was unable to retain counsel, address strategy, obtain experts, or settle the underlying action earlier, it never intended to do these things because of the other policy exclusions it intended to apply. Thus, the late notice did not deprive Nova of substantial rights related to

coverage determinations. For these reasons, the late notice exclusion did not apply.

## VII.

IINA contends the motion judge should have ruled the (j)(1) exclusion applied. It asserts the judge found Grabowski stated the wall was included in the lease and therefore the exclusion barred coverage for the "repair, replacement, enhancement, restoration, or maintenance of the rented property." However, the judge erred when he found this was a third-party loss of use claim triggering coverage. IINA argues, since plaintiff leased the property and the wall was shared, the exclusion should have applied.

As we recounted, plaintiff concedes it does not seek coverage for the loss of use or even that the harm was the loss of use of the property. The (j)(1) exclusion plainly does not cover costs or expenses to repair or restore leased property. Therefore, the judge should have found this exclusion applied.

## VIII.

In sum, although we have reversed a portion of the motion judge's ruling on the appeal and IINA's cross-appeal, the outcome remains the same. Plaintiff was not entitled to coverage based on the applicable exclusions, and summary judgment was properly granted to defendants. To the extent we have not

33

addressed an argument raised by the parties, it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part and reversed in part on the appeal. Reversed on IINA's cross-appeal and affirmed on Nova's cross-appeal. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2232-24